Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Hope Murphy and Carol Lesh, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>Olly Public Benefit Corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Table of Contents**

I.     Introduction. ................................................................................................................... 1
II.    Parties. .......................................................................................................................... 2
III.   Jurisdiction, venue, and divisional assignment. ........................................................... 2
IV.    Facts. ............................................................................................................................ 2
       A.    It is important to consumers that over-the-counter melatonin is accurately dosed and labelled. .......................................................................................... 2
       B.    Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands. ........................................................................................... 4
       C.    Olly sells over-the-counter melatonin supplements to millions of U.S. consumers. ..................................................................................................... 4
       D.    Scientific testing reveals that Olly Melatonin has substantial and random overdoses of melatonin. ................................................................................. 6
       E.    Olly's labelling is false and misleading to reasonable consumers. ............... 7
       F.    Olly overcharges millions of consumers. ...................................................... 8
       G.    Plaintiffs were misled and harmed by Olly's misleading labelling. ............. 9
V.     Class action allegations. ............................................................................................. 10
VI.    Claims. ........................................................................................................................ 12
       Count 1: Violations of State Consumer Protection Acts ............................................. 12
       Count 2: Violation of California's Unfair Competition Law (UCL) .......................... 13
       Count 3: Violation of California's False Advertising Law (FAL) ............................. 14
       Count 4: Unjust Enrichment/Quasi-Contract .............................................................. 15
VII.   Jury Demand. .............................................................................................................. 15
VIII.  Prayer for Relief. ........................................................................................................ 15

## I.     Introduction.

1. Melatonin is a neurohormone that regulates the brain's sleep cycle. Millions of consumers take over-the-counter melatonin supplements to help them sleep. Because melatonin alters brain chemistry, it is important that these supplements are accurately dosed and labelled.

2. A few years ago, scientists tested Canadian melatonin supplements and found that, for a number of brands, the true amount of melatonin varied wildly from the label. Scientists and the National Institute of Heath have warned that the same may be true here in the U.S.

3. Olly is a major U.S. brand of melatonin supplements, sold nationwide at retailers like Walmart, Whole Foods, and Target. Each bottle claims to have a specific dose of melatonin per serving. For example:



4. Like millions of other consumers, Plaintiffs bought Olly melatonin and trusted the accuracy of Olly's dosing and labelling. To determine how much melatonin is really in Olly, a university mass-spectrometry laboratory tested multiple bottles, including Plaintiffs' bottles. The results were alarming—all bottles were substantially (and seemingly randomly) overdosed. The true amount of melatonin was 165% to 274% of the amount claimed.

5. Olly systematically misrepresents how much melatonin is in the supplements it sells. Consumers are being misled, overcharged, and put at risk.

## II. Parties.

6. Plaintiff Hope Murphy is domiciled in Vista, California. She purchased a bottle of Olly Sleep in California.

7. Plaintiff Carol Lesh is domiciled in Berkeley, California. She purchased a bottle of Olly Sleep Extra Strength in California.

8. The proposed class includes citizens of every state.

9. Defendant Olly Public Benefit Corporation is a Delaware corporation with its principal place of business in San Francisco, California.

## III. Jurisdiction, venue, and divisional assignment.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Olly.

11. The Court has personal jurisdiction over Olly because (among other reasons) its principal place of business is in California.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because Olly resides in this District, at its San Francisco headquarters.

13. <u>Divisional Assignment</u>. This case should be assigned to the San Francisco or Oakland division. *See* L.R. 3-2(d). A substantial part of the events giving rise to the claims occurred in San Francisco, at Olly's headquarters.

## IV. Facts.

### A. It is important to consumers that over-the-counter melatonin is accurately dosed and labelled.

14. Melatonin (N-acetyl-5-methoxytryptamine) is a neurohormone produced by the pineal gland in the brain. It regulates the brain's circadian rhythm and sleep cycle.



*The chemical structure of melatonin*

15. Millions of U.S. consumers take melatonin supplements to treat sleep problems, anxiety, and other issues. Melatonin is one of the most popular over-the-counter supplements in the U.S., and its use has "significantly increased" in the last 20 years. [1] Its use to help children fall asleep is becoming increasingly popular too. [2]

16. As scientists explained in the Journal of Clinical Sleep Medicine, because melatonin is "self-prescribed" (i.e., purchased directly by consumers who are not experts), it is particularly "important that labels are informative and representative of the product," i.e., that the "label claim values for the active ingredient are accurate." [3] When melatonin is falsely labelled, lower doses of melatonin "might be ineffective," while "higher doses could lead to unpleasant/unexpected side effects." [4] Side effects of melatonin include headaches, dizziness, nausea, or excessive or unwanted sleepiness. [5] "Many experts recommend starting with the smallest available dosage — 0.5 milligrams to 1 milligram." [6] And regardless of side effects, consumers don't want to take random, uncontrolled amounts of a neurohormone that alters brain chemistry.

---

[1] JAMA Research Letter, Trends in Use of Melatonin Supplements Among US Adults, 1999-2018, 327(5) JAMA 483 (2022).
[2] The New York Times, Parents Are Relying on Melatonin to Help Their Kids Sleep. Should They?, https://www.nytimes.com/2020/05/18/parenting/melatonin-sleep-kids.html
[3] Erland, L. & Saxena, P., Melatonin Natural Health Products and supplements: Presence of serotonin and significant variability of melatonin content, 13 Journal of Clinical Sleep Medicine 275–281 (2017).
[4] Grigg-Damberger, M. & Ianakieva, D., Poor quality control of over-the-counter melatonin: What they say is often not what you get, 13 Journal of Clinical Sleep Medicine 163–165 (2017).
[5] NIH National Library of Medicine Medline Plus, Melatonin, https://medlineplus.gov/druginfo/natural/940.html
[6] The New York Times, *Melatonin Isn't a Sleeping Pill. Here's How to Use It*, https://www.nytimes.com/2022/01/11/well/mind/melatonin-sleep-insomnia.html

B.   **Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands.**

17. In 2017, a study of Canadian melatonin brands found "high variability, ranging from −83% to +478%, of the labelled concentration of melatonin content in melatonin supplements." [7] For over 70% of the tested brands, the true amount of Melatonin varied more than 10% from the listed amount.  The amount of melatonin also varied highly between different lots (manufacturing batches) of the same product.  The researchers concluded that "manufacturers require increased controls to ensure melatonin supplements" are accurately labelled.

18. U.S. scientists warned that this Canadian study "herald[s] what may also be true in OTC melatonin supplements marketed in the United States." [8] Likewise, the National Institute of Health has warned that "some melatonin supplements may not contain what's listed on the product label." [9] And Consumer Reports warned: "The findings … offer the latest proof of something supplement industry critics have long warned about: When it comes to this poorly regulated corner of modern medicine, consumers often don't know what they're buying." [10]

C.   **Olly sells over-the-counter melatonin supplements to millions of U.S. consumers.**

19. Olly is a major U.S. brand of melatonin supplements.  Its melatonin products ("Olly Melatonin") are available nationwide at retailers like Walmart, Target, and Whole Foods.  Millions of U.S. consumers buy Olly Melatonin and rely on the accuracy of its labelling.

20. Olly makes and sells several varieties of Olly Melatonin, including the following non-limiting examples:  Olly Sleep (regular, Extra Strength, and Ultra Strength), Immunity Sleep, Muscle Recovery Sleep, and Kids Sleep.  For each product, the label claims a specific amount of melatonin per serving, e.g., 3 mg or 5 mg.  Example products are shown below:

---

[7] Lauren, *Melatonin Natural Health Products and supplements*, 13 Journal of Clinical Sleep Medicine at 276.

[8] Madeleine, *Poor quality control of over-the-counter melatonin*, 13 Journal of Clinical Sleep Medicine at 163.

[9] NIH National Center for Complementary and Integrative Health, *Melatonin:What You Need To Know*, https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know

[10] Consumer Reports, *New Study Questions Ingredient Levels in Some Melatonin Supplements*, https://www.consumerreports.org/melatonin/study-questions-ingredient-levels-some-melatonin-supplements/





21. All Olly Melatonin products are substantially similar. They all advertise melatonin as a key, active ingredient and claim to have a specific amount of melatonin per serving.

**D.  Scientific testing reveals that Olly Melatonin has substantial and random overdoses of melatonin.**

22. Liquid Chromatography-Mass Spectrometry analysis (LC-MS) can accurately measure the true amount of melatonin in an over-the-counter supplement. For Olly Melatonin, a university mass-spectrometry used LC-MS to test Olly Melatonin. The lab tested multiple bottles and types of Olly Melatonin, including Plaintiffs' bottles. The results are summarized below:

| Olly type | Claimed melatonin dose (mg / gummy)[11] | True melatonin dose (mg / gummy)[12] | True melatonin dose (%)[13] |
|---|---|---|---|
| Olly Sleep | 1.50 | 4.11 | +274% |
| Olly Immunity Sleep | 1.50 | 2.48 | +165% |
| Olly Extra Strength | 2.50 | 4.77 | +190% |

---

[11] The serving size for each bottle is 2 gummies/serving. Accordingly, the per-gummy claimed amount of melatonin is half the per-serving claimed amount.

[12] The lab tested three gummies per bottle and averaged the results. There was little variance in the melatonin content between gummies in the same bottle.

[13] The percentage ratio of the true dose to the claimed dose.

CLASS ACTION COMPLAINT                        6                                Case No.

23. As the results show, the melatonin content of Olly is consistently (and randomly) overdosed. For example, the bottle of Olly Sleep had nearly three times the amount of melatonin listed on the label, and the bottle of Olly Extra Strength had nearly twice the amount of listed melatonin. Something is systematically and seriously wrong with Olly's dosing and labelling.

### E. Olly's labelling is false and misleading to reasonable consumers.

24. By selling a melatonin supplement for sleep (i.e., a supplement that alters brain chemistry), Olly is representing to consumers that its products are accurately dosed and labelled. When a consumer picks up a bottle of Olly Melatonin, they reasonably expect that it actually has the dosage for which Olly designed the recommended serving. No reasonable consumer expects that a melatonin supplement has a random and substantial overdose of melatonin, compared to what it is supposed to have. And specifically, when a bottle of Olly says it has a particular amount of melatonin per serving (e.g., 5 mg), consumers expect this to be accurate.

25. At a bare minimum, reasonable consumers would expect that if the true amount of melatonin in Olly's supplements was substantially (and randomly) higher than the listed amount, Olly would prominently disclose this fact. Consumers do not know the accuracy of Olly's dosing—that is exclusively within Olly's knowledge. And Olly affirmatively represents that its products have a specific amount of melatonin, e.g., 3 mg and 5 mg.

26. Olly's labeling is false and misleading to consumers in multiple respects. The dosage of Olly Melatonin is not well-controlled and consistent with the dosages for which Olly designed the recommended servings. Olly Melatonin does not have the amount of melatonin claimed on the label. And Olly does not even mention that the actual dosage may vary.

27. The inaccurate dosing and labelling of Olly Melatonin is highly material to reasonable consumers. Consumers need melatonin supplements to be accurately dosed and labelled, so that consumers aren't unknowingly ingesting more neurohormone than they intend to take. No reasonable consumer wants to buy and ingest a supplement containing a random, undisclosed amount of melatonin. No reasonable consumer wants a product that even has a material risk of such problems.

28. Olly recognizes that its consumers demand accuracy in dosing and labeling. Olly sells different types of Olly Melatonin, with different claimed strengths, so that consumers can choose what is right for them. Olly's website claims that its products are "ensured with quality and safety," and that "every product is made to meet our formulators specifications for identity, purity and potency to ensure they meet what their label claims." [14] Olly says this because consumers want this to be true. But it is not true.

29. Olly also admits that it is undesirable and even dangerous for consumers to ingest more melatonin than the recommended dosage on the bottles. Olly states: "We do not recommend exceeding the amount noted on every bottle's Suggested Use. Each product was formulated by nutritional experts to deliver an effective dose of active ingredients that address daily needs and promote optimum health." [15] But due to Olly's inaccurate dosing and labelling, Olly's customers are unknowingly doing exactly what Olly recommends against (exceeding the recommended dosages for each bottle).

30. Olly knows, or reasonably should know, that it is misleading consumers. As described above, Olly claims that it actively monitors the "potency" of "every product." Therefore Olly knows, or reasonably should know, that the potency of Olly Melatonin is systematically inaccurate, compared to its labels.

**F.     Olly overcharges millions of consumers.**

31. Olly's false and misleading labelling drives the demand for Olly Melatonin. As explained above, consumers demand melatonin that is accurately dosed and labelled. This is recognized by scientists, Consumer Reports, and Olly itself. If Olly told the truth—that its dosing and labelling was seriously inaccurate—the price of its products would crater. For example, on the Target website, a bottle of Olly Sleep costs $12.89. If consumers knew the truth—that this bottle likely has some random and excessive amount of melatonin per serving—Olly could not sell it for anything close to $12.89 (or even sell it at all). Plaintiffs and each class member paid a substantial price premium driven by Olly's false and misleading labelling.

---

[14] https://www.olly.com/pages/inside-the-product
[15] https://help.olly.com/hc/en-us/articles/360035074332-Can-I-take-more-than-the-recommended-dose-

32. In fact, without accurate dosing and labelling, Olly Melatonin is worthless. What reasonable consumer wants to buy a supplement that alters brain chemistry, knowing that it may be randomly and substantially overdosed? There is no melatonin product on the market that tells its customers that its dosing is seriously inaccurate because such a product could not sell. Plaintiffs and each class member paid for Olly Melatonin products that are, in truth, worthless. Thus, the full economic injury here is the entire price of the Olly Melatonin that Plaintiffs and class members purchased.

**G.     Plaintiffs were misled and harmed by Olly's misleading labelling.**

33. Like millions of other consumers, Plaintiffs bought Olly Melatonin and relied on the accuracy of Olly's dosing and labelling.

34. In or around fall 2021, Carol Lesh bought a bottle of Olly Sleep Extra Strength (Lot #1246D5716) from a Whole Foods in Berkeley, California. Because she was buying a melatonin supplement that could alter brain chemistry, she relied on the fact that Olly's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages). She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to take it. She would not have purchased the product if she knew that Olly had serious problems with the accuracy of its dosing and labelling. In fact, knowing the truth, the product is worthless to her.

35. In or around March 2022, Hope Murphy purchased a bottle of Olly Sleep (Lot #1300M5735) from either Walmart or Winco in Oceanside, California. Because she was buying a melatonin supplement that could alter brain chemistry, she relied on the fact that Olly's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages). She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to take it. She would not have purchased the product if she knew that Olly had problems with the accuracy of its dosing and labelling. In fact, knowing the truth, the product is worthless to her.

36. Plaintiffs want Olly to fix its manufacturing practices and sell its melatonin products with accurate dosing and labelling. If Olly fixes its products, so that they are accurately dosed and labelled, Plaintiffs would buy them again. But given Olly's past deception, Plaintiffs cannot rely on Olly's word alone that it has fixed the problem. Plaintiffs face an imminent threat of harm because

they will not be able to rely on Olly's labels in the future, and will not be able to buy Olly Melatonin, even if Olly claims to have fixed the issue. To buy Olly products again, Plaintiffs need the Court to enter an order forbidding Olly from selling its melatonin unless it has fixed the dosing and labelling problem. With that Court order in hand, Plaintiffs could and would buy Olly Melatonin again. And with that order in hand, millions of other consumers will be protected from being deceived like Plaintiffs were deceived.

**V.     Class action allegations.**

37.    Plaintiffs bring their claims individually and on behalf of the following class and subclasses:

| Class or Subclass Name | Definition |
|---|---|
| Nationwide Class | All persons who purchased Olly Melatonin in the United States during the applicable statute of limitations. |
| Multi-State Consumer Protection Subclass | All persons who purchased Olly Melatonin in the identified states (*see* Count 1) during the applicable statute of limitations. |
| California Subclass | All persons who purchased Olly Melatonin in California during the applicable statute of limitations. |

38.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

*Numerosity*

39. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

40. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether Olly Melatonin products are accurately dosed and labelled;
- Whether Olly's labelling is misleading to reasonable consumers;
- Whether Olly violated state consumer protection laws;
- The monetary relief needed to reasonably compensate Plaintiffs and the proposed class.

*Typicality*

41. Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased Olly Melatonin.

*Predominance and Superiority*

42. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Olly Melatonin labelling is found to be misleading for some consumers, but not other similarly-situated consumers.

43. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Olly's labelling is misleading to reasonable consumers.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to separately litigate millions of individual claims.

## VI. Claims.

### Count 1: Violations of State Consumer Protection Acts
### (on behalf of Plaintiffs and the Multi-State Consumer Protection Subclass)

45. Plaintiffs incorporate each and every factual allegation set forth above.

46. As alleged below, Plaintiffs bring individual and subclass claims based on California law. For the Multi-State Consumer Protection Subclass, Plaintiffs bring this count for violations of state consumer protection laws that are materially-similar to the laws of California, including:

| State | Statute |
| --- | --- |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

47. Each of these statutes is materially similar. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires individualized reliance, or proof of defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

48. As alleged in detail above, Olly's misrepresentations and omissions are misleading to reasonable consumers in a material way. Olly's false and misleading labelling was a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of class members.

49. Plaintiffs and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products

because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

**Count 2: Violation of California's Unfair Competition Law (UCL)**
**(on behalf of Plaintiffs and the California Subclass)**

50. Plaintiffs incorporate each and every factual allegation set forth above.

51. Plaintiffs bring this cause of action individually and on behalf of the California Subclass.

52. Olly has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

53. Olly engaged in unlawful conduct by violating the FAL, as alleged below and incorporated here.

*The Fraudulent Prong*

54. As alleged in detail above, Olly's labelling is false and misleading. Its labelling is likely to deceive, and did deceive, Plaintiffs and other reasonable consumers.

*The Unfair Prong*

55. Olly's conduct, as detailed above, also violated the "unfair" prong of the UCL.

56. Olly's conduct caused substantial injury to Plaintiffs and subclass members. The harm to Plaintiffs and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately dosed and labelled melatonin supplements have no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

57. Plaintiffs and the class could not have reasonably avoided this injury. As alleged above, Olly's misrepresentations and omissions were deceiving to reasonable consumers.

58. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers

59. Defendant's conduct violated the public policy against false and misleading advertising, which is tethered to the CLRA and FAL.

\* \* \*

60. For all prongs, Plaintiffs saw, read and reasonably relied on Olly's misrepresentations and omissions when purchasing Olly Melatonin. Classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Olly Melatonin.

61. Olly's misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decision and the purchase decisions of class members.

62. Plaintiffs and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 3: Violation of California's False Advertising Law (FAL)
**(on behalf of Plaintiffs and the California Subclass)**

63. Plaintiffs incorporate each and every factual allegation set forth above.

64. Plaintiffs bring this cause of action individually and on behalf of the California subclass.

65. As alleged in detail above, Olly falsely advertised its products by falsely representing that Olly Melatonin is accurately dosed and labelled.

66. Defendant's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiffs and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

67. Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiffs saw, read and reasonably relied on them when purchasing Olly Melatonin. Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

68. Defendant's misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decision and the purchase decisions of subclass members.

69. Plaintiffs and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 4: Unjust Enrichment/Quasi-Contract
**(on behalf of Plaintiffs and the Nationwide Class)**

70. Plaintiffs incorporate each and every factual allegation set forth above.

71. As alleged in detail above, Olly's false and misleading labeling caused Plaintiffs and the class to purchase Olly Melatonin and overpay for it.

72. In this way, Olly received a direct and unjust benefit, at the expense of Plaintiffs and the class.

73. Plaintiffs and the class seek the equitable return of this unjust benefit.

## VII. Jury Demand.

74. Plaintiffs demand a jury trial on all issues so triable.

## VIII. Prayer for Relief.

75. Plaintiffs seek the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages;
- Restitution, disgorgement, and other just equitable relief;
- An injunction;
- Pre- and post-judgment interest;
- Any additional relief that the Court deems reasonable and just.

| | | |
|---|---|---|
| 1 | Dated: June 24, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ Jonas Jacobson* |
| 4 | | Jonas B. Jacobson (Cal. Bar No. 269912)<br>jonas@dovel.com |
| 5 | | Simon Franzini (Cal. Bar No. 287631)<br>simon@dovel.com |
| 6 | | DOVEL & LUNER, LLP<br>201 Santa Monica Blvd., Suite 600 |
| 7 | | Santa Monica, California 90401<br>Telephone: (310) 656-7066 |
| 8 | | Facsimile: (310) 656-7069 |
| 9 | | *Counsel for Plaintiffs* |

CLASS ACTION COMPLAINT                16                Case No.