Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hope Murphy, Carol Lesh, and Emily Jiang, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>Olly Public Benefit Corporation,<br><br>*Defendant*. | Case No. 3:22-cv-03760-CRB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**Table of Contents**

I.    Introduction. ........................................................................................................... 1

II.    Parties. ................................................................................................................... 2

III.   Jurisdiction, venue, and divisional assignment. ................................................... 2

IV.   Facts. ..................................................................................................................... 2

     A.    It is important to consumers that over-the-counter melatonin is accurately dosed and labelled. ....................................................................................... 2

     B.    Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands. ............................................................................... 4

     C.    Olly sells over-the-counter melatonin supplements to millions of U.S. consumers. ............................................................................................... 4

     D.    Scientific testing reveals that Olly Melatonin has substantial and random overdoses of melatonin. ....................................................................... 6

     E.    Olly's labelling is false and misleading to reasonable consumers. ............... 7

     F.    Olly overcharges millions of consumers. ..................................................... 9

     G.    Plaintiffs were misled and harmed by Olly's misleading labelling. .............. 9

     H.    Plaintiffs have standing to seek an injunction. ............................................. 10

     I.    Plaintiffs have no adequate remedy at law .................................................. 11

V.    Class action allegations. ....................................................................................... 12

VI.   Claims. ................................................................................................................... 14

     Count 1: Violations of State Consumer Protection Acts ...................................... 14

     Count 2: Violation of California's Unfair Competition Law (UCL) ...................... 15

     Count 3: Violation of California's False Advertising Law (FAL) .......................... 16

     Count 4: Violation of the California Consumers Legal Remedies Act (CLRA) ..... 17

     Count 5: Violation of New York Gen. Bus. Law § 349 ......................................... 18

     Count 6: Violation of New York Gen. Bus. Law § 350 ......................................... 19

     Count 7: Breach of Express Warranty ................................................................. 19

     Count 8: Unjust Enrichment/Quasi-Contract ..................................................... 20

VII.  Jury Demand. ........................................................................................................ 20

VIII. Prayer for Relief. ................................................................................................... 20

# I.      Introduction.

1.      Melatonin is a neurohormone that regulates the brain's sleep cycle.  Millions of consumers take over-the-counter melatonin supplements to help them sleep.  Because melatonin alters brain chemistry, it is important that these supplements are accurately dosed and labelled.

2.      A few years ago, scientists tested Canadian melatonin supplements and found that, for a number of brands, the true amount of melatonin varied wildly from the label.  Scientists and the National Institute of Heath have warned that the same may be true here in the U.S.

3.      Olly is a major U.S. brand of melatonin supplements, sold nationwide at retailers like Walmart, Whole Foods, and Target.  Each bottle claims to have a specific dose of melatonin per serving.  For example:



4.      Like millions of other consumers, Plaintiffs bought Olly melatonin and trusted the accuracy of Olly's dosing and labelling.  To determine how much melatonin is really in Olly, a university mass-spectrometry laboratory tested multiple bottles, including Plaintiffs' bottles. The results were alarming—all bottles were substantially (and seemingly randomly) overdosed.  The true amount of melatonin was 165% to 274% of the amount claimed.

5.      Olly systematically misrepresents how much melatonin is in the supplements it sells. Consumers are being misled, overcharged, and put at risk.

**II.      Parties.**

6.      Plaintiff Hope Murphy is domiciled in Vista, California.  She purchased a bottle of Olly Sleep in California.

7.      Plaintiff Carol Lesh is domiciled in Berkeley, California.  She purchased a bottle of Olly Sleep Extra Strength in California.

8.      Plaintiff Emily Jiang is domiciled in Manhattan, New York.  They purchased a bottle of Olly Sleep in New York. [1]

9.      The proposed class includes citizens of every state.

10.      Defendant Olly Public Benefit Corporation is a Delaware corporation with its principal place of business in San Francisco, California.

**III.      Jurisdiction, venue, and divisional assignment.**

11.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Olly.

12.      The Court has personal jurisdiction over Olly because (among other reasons) its principal place of business is in California.

13.      Venue is proper under 28 U.S.C. § 1391(b)(1) because Olly resides in this District, at its San Francisco headquarters.

14.      <u>Divisional Assignment</u>.  This case should be assigned to the San Francisco or Oakland division.  *See* L.R. 3-2(d).  A substantial part of the events giving rise to the claims occurred in San Francisco, at Olly's headquarters.

**IV.      Facts.**

   **A.      It is important to consumers that over-the-counter melatonin is accurately dosed and labelled.**

15.      Melatonin (N-acetyl-5-methoxytryptamine) is a neurohormone produced by the pineal gland in the brain.  It regulates the brain's circadian rhythm and sleep cycle.

---

[1] Emily Jiang's pronouns are they/them.

1
2
3
4
5
6
7



*The chemical structure of melatonin*

8
9
10
11

16.     Millions of U.S. consumers take melatonin supplements to treat sleep problems, anxiety, and other issues.  Melatonin is one of the most popular over-the-counter supplements in the U.S., and its use has "significantly increased" in the last 20 years. [2] Its use to help children fall asleep is becoming increasingly popular too. [3]

12
13
14
15
16
17
18
19
20
21

17.     As scientists explained in the Journal of Clinical Sleep Medicine, because melatonin is "self-prescribed" (i.e., purchased directly by consumers who are not experts), it is particularly "important that labels are informative and representative of the product," i.e., that the "label claim values for the active ingredient are accurate." [4]  When melatonin is falsely labelled, lower doses of melatonin "might be ineffective," while "higher doses could lead to unpleasant/unexpected side effects." [5]  Side effects of melatonin include headaches, dizziness, nausea, or excessive or unwanted sleepiness. [6]  "Many experts recommend starting with the smallest available dosage — 0.5 milligrams to 1 milligram." [7] And regardless of side effects, consumers don't want to take random, uncontrolled amounts of a neurohormone that alters brain chemistry.

22
23
24
25
26
27
28

[2] JAMA Research Letter, *Trends in Use of Melatonin Supplements Among US Adults*, 1999-2018, 327(5) JAMA 483 (2022).
[3] The New York Times, *Parents Are Relying on Melatonin to Help Their Kids Sleep. Should They?*, https://www.nytimes.com/2020/05/18/parenting/melatonin-sleep-kids.html
[4] Erland, L. & Saxena, P., *Melatonin Natural Health Products and supplements: Presence of serotonin and significant variability of melatonin content*, 13 Journal of Clinical Sleep Medicine 275–281 (2017).
[5] Grigg-Damberger, M. & Ianakieva, D., *Poor quality control of over-the-counter melatonin: What they say is often not what you get*, 13 Journal of Clinical Sleep Medicine 163–165 (2017).
[6] NIH National Library of Medicine Medline Plus, *Melatonin*, https://medlineplus.gov/druginfo/natural/940.html
[7] The New York Times, *Melatonin Isn't a Sleeping Pill. Here's How to Use It*, https://www.nytimes.com/2022/01/11/well/mind/melatonin-sleep-insomnia.html

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands.**

18.    In 2017, a study of Canadian melatonin brands found "high variability, ranging from −83% to +478%, of the labelled concentration of melatonin content in melatonin supplements." [8]  For over 70% of the tested brands, the true amount of Melatonin varied more than 10% from the listed amount.  The amount of melatonin also varied highly between different lots (manufacturing batches) of the same product.  The researchers concluded that "manufacturers require increased controls to ensure melatonin supplements" are accurately labelled.

19.    U.S. scientists warned that this Canadian study "herald[s] what may also be true in OTC melatonin supplements marketed in the United States." [9]  Likewise, the National Institute of Health has warned that "some melatonin supplements may not contain what's listed on the product label." [10]  And Consumer Reports warned: "The findings … offer the latest proof of something supplement industry critics have long warned about: When it comes to this poorly regulated corner of modern medicine, consumers often don't know what they're buying." [11]

**C.    Olly sells over-the-counter melatonin supplements to millions of U.S. consumers.**

20.    Olly is a major U.S. brand of melatonin supplements.  Its melatonin products ("Olly Melatonin") are available nationwide at retailers like Walmart, Target, and Whole Foods.  Millions of U.S. consumers buy Olly Melatonin and rely on the accuracy of its labelling.

21.    Olly makes and sells several varieties of Olly Melatonin, including the following non-limiting examples that are currently offered: Olly Sleep (regular, Extra Strength, and Ultra Strength), Immunity Sleep, Muscle Recovery Sleep, and Kids Sleep. *See* Exhibit 1 (Olly Melatonin Products).

---

[8] Lauren, *Melatonin Natural Health Products and supplements*, 13 Journal of Clinical Sleep Medicine at 276.

[9] Madeleine, *Poor quality control of over-the-counter melatonin*, 13 Journal of Clinical Sleep Medicine at 163.

[10] NIH National Center for Complementary and Integrative Health, *Melatonin: What You Need To Know*,  https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know

[11] Consumer Reports, *New Study Questions Ingredient Levels in Some Melatonin Supplements*, https://www.consumerreports.org/melatonin/study-questions-ingredient-levels-some-melatonin-supplements/

For each product, the label claims a specific amount of melatonin per serving, e.g., 3 mg or 5 mg.

Example products are shown below:





22.     All Olly Melatonin products are substantially similar.  They all advertise "melatonin" as a key, active ingredient to help with sleep, and claim to have a specific amount of melatonin per serving. Each class member was presented with these substantially-similar representations.

**D.     Scientific testing reveals that Olly Melatonin has substantial and random overdoses of melatonin.**

23.     Liquid Chromatography-Mass Spectrometry analysis (LC-MS) can accurately measure the true amount of melatonin in an over-the-counter supplement.  For Olly Melatonin, a university mass-spectrometry laboratory used LC-MS to test Olly Melatonin. The lab tested multiple bottles and types of Olly Melatonin, including Plaintiffs' bottles.  The results are summarized below:

| Olly type | Claimed melatonin (mg / gummy)[12] | True melatonin (mg / gummy)[13] | True melatonin (%)[14] |
|---|---|---|---|
| Sleep (Hope Murphy) | 1.50 | 4.11 | +274% |
| Sleep (Emily Jiang) | 1.50 | 2.47 | +165% |
| Immunity Sleep | 1.50 | 2.48 | +165% |
| Extra Strength (Carol Lesh) | 2.50 | 4.77 | +190% |

---

[12] The serving size for each bottle is 2 gummies/serving.  Accordingly, the per-gummy claimed amount of melatonin is half the per-serving claimed amount.

[13] The lab tested three gummies per bottle and averaged the results. There was little variance in the melatonin content between gummies in the same bottle.

[14] The percentage ratio of the true dose to the claimed dose.

24.     As the results show, the melatonin content of Olly is consistently (and randomly) overdosed.  For example, the bottle of Olly Sleep had nearly three times the amount of melatonin listed on the label, and the bottle of Olly Extra Strength had nearly twice the amount of listed melatonin.  Something is systematically and seriously wrong with Olly's dosing and labelling. Based on these consistent results across types, all types of Olly Melatonin are systematically overdosed, compared to the labels.

**E.     Olly's labelling is false and misleading to reasonable consumers.**

25.     By selling a melatonin supplement for sleep (i.e., a supplement that alters brain chemistry), Olly is representing to consumers that its products are accurately dosed and labelled. When a consumer picks up a bottle of Olly Melatonin, they reasonably expect that it actually has the dosage for which Olly designed the recommended serving.  No reasonable consumer expects that a melatonin supplement has a random and substantial overdose of melatonin, compared to what it is supposed to have.  And specifically, when a bottle of Olly says it has a particular amount of melatonin per serving (e.g., 5 mg), consumers expect this to be accurate.

26.     At a minimum, reasonable consumers expect that if the true amount of melatonin in Olly's supplements was substantially (and randomly) overdosed, Olly would prominently disclose this fact.  Consumers do not know the accuracy of Olly's dosing—that is exclusively within Olly's knowledge.  Olly affirmatively represents that its products have a specific amount of melatonin, e.g., 3 mg and 5 mg, but conceals that these claimed dosages are inaccurate.   Olly's failure to disclose its systematic overdosing relates to an unreasonable safety hazard because exceeding the recommended dosage unreasonably increases the risk of side effects.  Olly's undisclosed overdosing also relates to the central function of its melatonin supplements, which is to provide an accurate dose (not a random overdose) of melatonin that promotes sleep.  As Olly itself states: "We do not recommend exceeding the amount noted on every bottle's Suggested Use.  Each product was formulated by nutritional experts to deliver an effective dose of active ingredients that address daily needs and promote optimum health." [15]

---

[15]  https://help.olly.com/hc/en-us/articles/360035074332-Can-I-take-more-than-the-recommended-dose-

27.     An honest brand can accurately dose melatonin.  In the study of Canadian brands, for example, about one-third of the supplements were dosed to within 10% of the label claim.  An honest brand can also accurately label melatonin, so that the claimed dosage reflects the actual dose. But Olly does neither.

28.     Olly's labelling is false and misleading to consumers in multiple respects.  The dosage of Olly Melatonin is not well-controlled and consistent with the dosages for which Olly designed the recommended servings.  Olly Melatonin does not have the amount of melatonin claimed on the label and instead is randomly overdosed.  And Olly does not even mention that the actual dosage may vary.

29.     The inaccurate dosing and labelling of Olly Melatonin is highly material to reasonable consumers.  Consumers need melatonin supplements to be accurately dosed and labelled, so that consumers aren't unknowingly ingesting more neurohormone than they intend to take.   No reasonable consumer wants to buy and ingest a supplement containing a random, undisclosed amount of melatonin.  No reasonable consumer wants a product that even has a material risk of such problems.

30.     Olly recognizes that its consumers demand accuracy in dosing and labeling.  Olly sells different types of Olly Melatonin, with different claimed strengths, so that consumers can choose what is right for them.  Olly's website claims that its products are "ensured with quality and safety," and that "every product is made to meet our formulators specifications for identity, purity and potency to ensure they meet what their label claims." [16]  Olly says this because consumers want this to be true.  But it is not true.

31.     Olly also admits that it is undesirable and even dangerous for consumers to ingest more melatonin than the recommended dosage on the bottles.  Olly states: "We do not recommend exceeding the amount noted on every bottle's Suggested Use.  Each product was formulated by nutritional experts to deliver an effective dose of active ingredients that address daily needs and promote optimum health." [17]  But due to Olly's inaccurate dosing and labelling, Olly's customers are

---

[16] https://www.olly.com/pages/inside-the-product
[17] https://help.olly.com/hc/en-us/articles/360035074332-Can-I-take-more-than-the-recommended-dose-

First Amended Complaint                          8                          No. 3:22-cv-03760-CRB

1  unknowingly doing exactly what Olly recommends against (exceeding the recommended dosages for
2  each bottle).

3      32.    As described above, Olly claims that it actively monitors the "potency" of "every

4  product."  And it is customary for manufacturers to test the potency of over-the-counter supplements

5  like melatonin, before they are sold.  Therefore, Olly knows that the potency of Olly Melatonin is

6  systematically overdosed compared to its labels.  And thus, Olly is knowingly and intentionally

7  misleading consumers.  In the alternative, Olly recklessly chose not to test the potency of its products,

8  while aware of the high risk that they were substantially overdosed.  In the alternative, at a minimum,

9  Olly reasonably should know that it is misleading consumers.

10      **F.    Olly overcharges millions of consumers.**

11      33.    Olly's false and misleading labelling drives the demand for Olly Melatonin.  As

12  explained above, consumers demand melatonin that is accurately dosed and labelled.  This is

13  recognized by scientists, Consumer Reports, and Olly itself.  If Olly told the truth—that its dosing

14  and labelling was seriously inaccurate—the price of its products would crater.  For example, on the

15  Target website, a bottle of Olly Sleep costs $12.89.  If consumers knew the truth—that this bottle

16  likely has some random and excessive amount of melatonin per serving—Olly could not sell it for

17  anything close to $12.89 (or even sell it at all).  Plaintiffs and each class member paid a substantial

18  price premium driven by Olly's false and misleading labelling.

19      34.    In fact, without accurate dosing and labelling, Olly Melatonin is worthless.  What

20  reasonable consumer wants to buy a supplement that alters brain chemistry, knowing that it may be

21  randomly and substantially overdosed?  There is no melatonin product on the market that tells its

22  customers that its dosing is seriously inaccurate because such a product could not sell.  Plaintiffs and

23  each class member paid for Olly Melatonin products that are, in truth, worthless.  Thus, the full

24  economic injury here is the entire price of the Olly Melatonin that Plaintiffs and class members

25  purchased.

26      **G.    Plaintiffs were misled and harmed by Olly's misleading labelling.**

27      35.    Like millions of other consumers, Plaintiffs bought Olly Melatonin and relied on the

28  accuracy of Olly's dosing and labelling.

36.     In or around fall 2021, Carol Lesh bought a bottle of Olly Sleep Extra Strength (Lot #1246D5716) from a Whole Foods in Berkeley, California.  Because she was buying a melatonin supplement that could alter brain chemistry, she relied on the fact that Olly's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages).  She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to take it.  She would not have purchased the product if she knew that Olly had serious problems with the accuracy of its dosing and labelling.  In fact, knowing the truth, the product is worthless to her.

37.     In or around fall 2021, Emily Jiang bought a bottle of Olly Sleep (Lot #1295M9300) from a Target in Clinton, New York.  Because they were buying a "melatonin" supplement that could alter brain chemistry, they relied on the fact that Olly's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages).  They read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to take it.  They would not have purchased the product if they knew that Olly had systematic and serious problems with the accuracy of its dosing and labelling.  In fact, knowing the truth, the product is worthless to them.

38.     In or around March 2022, Hope Murphy purchased a bottle of Olly Sleep (Lot #1300M5735) from either a Walmart or Winco in Oceanside, California.  Because she was buying a melatonin supplement that could alter brain chemistry, she relied on the fact that Olly's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages).  She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to take it.  She would not have purchased the product if she knew that Olly had problems with the accuracy of its dosing and labelling.  In fact, knowing the truth, the product is worthless to her.

**H.     Plaintiffs have standing to seek an injunction.**

39.     Plaintiffs want Olly to fix its manufacturing practices and sell its melatonin products with accurate dosing and labelling.  If Olly fixes its products, so that they are accurately dosed and labelled, Plaintiffs would buy them again.  But given Olly's past deception, Plaintiffs cannot rely on Olly's word alone that it has fixed the problem.  Plaintiffs face an imminent threat of harm because they will not be able to rely on Olly's labels in the future, and will not be able to buy Olly Melatonin, even if Olly claims to have fixed the issue.  To buy Olly products again, Plaintiffs need the Court to

1    enter an order forbidding Olly from selling its melatonin unless it has fixed the dosing and labelling

2    problem.  With that Court order in hand, Plaintiffs could and would buy Olly Melatonin again.  And

3    with that order in hand, millions of other consumers will be protected from being deceived like

4    Plaintiffs were deceived.

5         **I.       Plaintiffs have no adequate remedy at law.**

6         40.    As described above, Plaintiffs suffer an actual and imminent threat of future harm that

7    cannot be cured with monetary damages.  For this harm, Plaintiffs lack an adequate remedy at law

8    and require injunctive relief.

9         41.    Plaintiffs also seek damages and, in the alternative, equitable restitution.  Plaintiffs

10   seek restitution in the alternative because they have no adequate remedy at law.

11        42.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  To obtain

12   a full refund as damages, Plaintiffs must show that the products they received have essentially no

13   market value.  In contrast, Plaintiffs can seek restitution without making this showing.  This is

14   because Plaintiffs purchased products that they would not otherwise have purchased, but for Olly's

15   misrepresentations and omissions.  So obtaining a full refund at law is less certain that obtaining a

16   refund in equity.

17        43.    Also, winning damages under the CLRA requires additional showings not required

18   under the UCL and FAL.  For example, to obtain damages under the CLRA, Plaintiffs must prove

19   that they complied with the CLRA's notice requirement.  No such requirements exist to obtain

20   restitution.  In addition, the CLRA prohibits only particular categories of deceptive conduct.  By

21   contrast, the UCL prohibits "unfair" conduct and is thus broader.

22        44.    By the same token, Plaintiff's common law claims require additional showings,

23   compared to their UCL and FAL claims.  For example, to prevail on their breach of warranty claim,

24   Plaintiffs need to show that the statements they challenge constitute a warranty and that the warranty

25   was part of the basis of the bargain.  No such showings are required by the UCL or FAL.  In fact, the

26   UCL and the FAL were enacted specifically to create new claims and remedies not available at

27   common law.  So in this way, Plaintiffs' UCL and FAL claims are more certain than their legal

28   claims.

45.     Finally, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.      Class action allegations.**

46.     Plaintiffs bring their claims individually and on behalf of the following class and subclasses:

| Class or Subclass Name | Definition | Class representative(s) |
|---|---|---|
| Nationwide Class | All persons who purchased Olly Melatonin in the United States during the applicable statute of limitations. | All Plaintiffs |
| Multi-State Consumer Protection Subclass | All persons who purchased Olly Melatonin in the identified states (*see* Count 1) during the applicable statute of limitations. | All Plaintiffs |
| California Subclass | All persons who purchased Olly Melatonin in California during the applicable statute of limitations. | Carol Lesh and Hope Murphy (CA) |
| New York Subclass | All persons who purchased Olly Melatonin in New York during the applicable statute of limitations. | Emily Jiang (NY) |

47.     The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

*Numerosity*

48.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

49.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- Whether Olly Melatonin products are accurately dosed and labelled;
- Whether Olly's labelling is misleading to reasonable consumers;
- Whether Olly violated state consumer protection laws;
- The monetary relief needed to reasonably compensate Plaintiffs and the proposed class.

*Typicality*

50.     Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased Olly Melatonin.

*Predominance and Superiority*

51.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that Olly Melatonin labelling is found to be misleading for some consumers, but not other similarly-situated consumers.

52.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Olly's labelling is misleading to reasonable consumers.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to separately litigate millions of individual claims.

*Classwide injunctive relief*

54.     Olly has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

**VI.    Claims.**

**Count 1: Violations of State Consumer Protection Acts**

**(on behalf of all Plaintiffs and the Multi-State Consumer Protection Subclass)**

55.    Plaintiffs incorporate each and every factual allegation set forth above.

56.    As alleged below, Plaintiffs bring individual and subclass claims based on California law.  For the Multi-State Consumer Protection Subclass, Plaintiffs bring this count for violations of state consumer protection laws that are materially-similar to the laws of California, including:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

57.    Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires individualized reliance, or proof of defendant's knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

58.    As alleged in detail above, Olly's misrepresentations and omissions are misleading to reasonable consumers in a material way.  Olly's false and misleading labelling was a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of class members.

59.    Plaintiffs and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products

1   because the products are sold at a price premium due to Olly's misleading labelling; or (c) they

2   received products that were, in truth, worthless.

3                      **Count 2: Violation of California's Unfair Competition Law (UCL)**

4                      **(on behalf of Plaintiffs Murphy and Lesh and the California Subclass)**

5        60.    Plaintiffs incorporate each and every factual allegation set forth above.

6        61.    Plaintiffs bring this cause of action individually and on behalf of the California

7   Subclass.

8        62.    Olly has violated California's Unfair Competition Law (UCL) by engaging in

9   unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

10       *The Unlawful Prong*

11       63.    Olly engaged in unlawful conduct by violating the FAL and CLRA, as alleged below

12  and incorporated here.

13       *The Fraudulent Prong*

14       64.    As alleged in detail above, Olly's labelling is false and misleading.  Its labelling is

15  likely to deceive, and did deceive, Plaintiffs and other reasonable consumers.

16       *The Unfair Prong*

17       65.    Olly's conduct, as detailed above, also violated the "unfair" prong of the UCL.

18       66.    Olly's conduct caused substantial injury to Plaintiffs and subclass members.  The harm

19  to Plaintiffs and the subclass greatly outweighs the public utility of Defendant's conduct (which is

20  none).  Inaccurately dosed and labelled melatonin supplements have no public utility.  This injury

21  was not outweighed by any countervailing benefits to consumers or competition.  Misleading labels

22  only injure healthy competition and harm consumers.

23       67.    Plaintiffs and the class could not have reasonably avoided this injury.  As alleged

24  above, Olly's misrepresentations and omissions were deceiving to reasonable consumers.

25       68.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive,

26  unscrupulous, and substantially injurious to consumers

27       69.    Defendant's conduct violated the public policy against false and misleading

28  advertising, which is tethered to the CLRA and FAL.

* * *

70.    For all prongs, Plaintiffs saw, read and reasonably relied on Olly's misrepresentations and omissions when purchasing Olly Melatonin.  Classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Olly Melatonin.

71.    Olly's misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decision and the purchase decisions of class members.

72.    Plaintiffs and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

## Count 3: Violation of California's False Advertising Law (FAL)

### (on behalf of Plaintiffs Murphy and Lesh and the California Subclass)

73.    Plaintiffs incorporate each and every factual allegation set forth above.

74.    Plaintiffs bring this cause of action individually and on behalf of the California subclass.

75.    As alleged in detail above, Olly falsely advertised its products by falsely representing that Olly Melatonin is accurately dosed and labelled.

76.    Defendant's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiffs and other reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

77.    Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiffs saw, read and reasonably relied on them when purchasing Olly Melatonin.  Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

78.    Defendant's misrepresentations and omissions were a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of subclass members.

1      79.     Plaintiffs and class members were injured as a direct and proximate result of Olly's

2   conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has

3   serious and systematic problems with its dosing and labelling; (b) they overpaid for the products

4   because the products are sold at a price premium due to Olly's misleading labelling; or (c) they

5   received products that were, in truth, worthless.

6                  **Count 4: Violation of the California Consumers Legal Remedies Act (CLRA)**

7                       **(on behalf of Plaintiffs Murphy and Lesh and the California Subclass)**

8      80.     Plaintiffs incorporate each and every factual allegation set forth above.

9      81.     Plaintiffs bring this cause of action individually and on behalf of the California

10  Subclass.

11     82.     As alleged in detail above, Olly has violated the CLRA by falsely representing that

12  Olly Melatonin is accurately dosed and labelled.  As a result of engaging in such conduct, Defendant

13  has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

14     83.     Defendant's misrepresentations and omissions were likely to deceive, and did deceive,

15  Plaintiffs and reasonable consumers.  Olly knew, or should have known through the exercise of

16  reasonable care, that these statements were false and misleading.

17     84.     Defendant's misrepresentations and omissions were intended to induce reliance, and

18  Plaintiffs saw, read and reasonably relied on them when purchasing the products.  Classwide reliance

19  can be inferred because Olly's misrepresentations and omissions were material, i.e., a reasonable

20  consumer would consider them important in deciding whether to buy the products.

21     85.     As alleged above, Defendant's misrepresentations were knowing and intentional.

22     86.     Defendant's misrepresentations and omissions were a substantial factor and proximate

23  cause in causing damages and losses to Plaintiffs and class members.

24     87.     Plaintiffs and class members were injured as a direct and proximate result of Olly's

25  conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has

26  serious and systematic problems with its dosing and labelling; (b) they overpaid for the products

27  because the products are sold at a price premium due to Olly's misleading labelling; or (c) they

28  received products that were, in truth, worthless.

88.     CLRA § 1782 NOTICE.  On June 27, 2022, Plaintiffs Murphy and Lesh sent a CLRA demand letter to Olly's San Francisco headquarters and its California registered agent, via certified mail (return receipt requested).  This letter provided notice of the particular violations alleged here and demanded that Defendant correct the problem.  Defendant did not respond.  Accordingly, Plaintiffs seek all monetary and equitable relief available under the CLRA, including reasonable attorney fees.

89.     CLRA venue declarations are attached.

## Count 5: Violation of New York Gen. Bus. Law § 349

### (on behalf of Plaintiff Jiang and the New York Subclass)

90.     Plaintiff incorporates each and every factual allegation set forth above.

91.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

92.     Plaintiff and the subclass purchased Olly Melatonin Products in New York.

93.     Olly's labelling is consumer-oriented and its misleading labelling has a broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase Olly Melatonin.

94.     As alleged in detail above, Olly's misrepresentations and omissions are likely to mislead reasonable consumers acting reasonably under the circumstances.  These misrepresentations and omissions were material (and important) to consumers and drove their choice to purchase Olly Melatonin.

95.     As alleged above, Olly's misrepresentations and omissions were willful and knowing.

96.     Plaintiff and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

97.     Plaintiff and the subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 349 (h).

## **Count 6: Violation of New York Gen. Bus. Law § 350**

### **(on behalf of Plaintiff Jiang and the New York Subclass)**

98.     Plaintiff incorporates each and every factual allegation set forth above.

99.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

100.     Plaintiff and the subclass purchased Olly Melatonin Products in New York.

101.     Olly's labelling is consumer-oriented and its misleading labelling has a broad impact on consumers at large, i.e., the multitude of New Yorkers that purchase Olly Melatonin.

102.     As alleged in detail above, Olly's misrepresentations and omissions are likely to mislead reasonable consumers acting reasonably under the circumstances.  These misrepresentations and omissions were material (and important) to consumers and drove their choice to purchase Olly Melatonin.

103.     As alleged above, Olly's misrepresentations and omissions were willful and knowing.

104.     Plaintiff and class members were injured as a direct and proximate result of Olly's conduct because: (a) they would not have purchased Olly Melatonin if they had known that Olly has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Olly's misleading labelling; or (c) they received products that were, in truth, worthless.

105.     Plaintiff and the subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 350-e (3).

## **Count 7: Breach of Express Warranty**

### **(on behalf of Plaintiffs and the California and New York Subclasses)**

106.     Plaintiffs incorporate by reference each and every factual allegation set forth above.

107.     Plaintiffs bring this count individually.  In addition, Plaintiffs Murphy and Lesh bring this claim on behalf of the California Subclass and Plaintiff Jiang brings this claim on behalf of the New York subclass.

108.     Olly, as the designer and manufacturer of Olly Melatonin, issued material, written warranties by representing that Olly Melatonin had a particular amount of melatonin per serving.

This was an affirmation of fact about the products (i.e., a description of the ingredients) and a promise relating to the goods.

109.   This warranty was part of the basis of the bargain and Plaintiffs relied on this warranty.

110.   Olly Melatonin does not conform to this warranty because, as alleged in detail above, Olly's dosing and labelling is systematically inaccurate.  Thus, the warranty was breached.

111.   Plaintiff Jiang provided pre-suit notice of their breach of warranty claim, sent to Olly's San Francisco headquarters and its California registered agent, on July 7, 2022.  Olly did not respond.

### Count 8: Unjust Enrichment/Quasi-Contract

### (on behalf of all Plaintiffs and the Nationwide Class)

112.   Plaintiffs incorporate each and every factual allegation set forth above.

113.   Plaintiffs bring this count individually and for the Nationwide Class.

114.   As alleged in detail above, Olly's false and misleading labelling caused Plaintiffs and the class to purchase Olly Melatonin and overpay for it.

115.   In this way, Olly received a direct and unjust benefit, at the expense of Plaintiffs and the class.

116.   Plaintiffs and the class seek the equitable return of this unjust benefit.

**VII.   Jury Demand.**

117.   Plaintiffs demand a jury trial on all issues so triable.

**VIII.   Prayer for Relief.**

118.   Plaintiffs seek the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages, statutory damages, punitive damages, and treble damages as available by law;
- Restitution, disgorgement, and other just equitable relief;
- An injunction;

1          • Attorney fees, as available by law;

2          • Pre- and post-judgment interest;

3          • Any additional relief that the Court deems reasonable and just.

4

5    Dated: August 8, 2022               Respectfully submitted,

6                                        By: */s/ Jonas Jacobson*

7
                                         Jonas B. Jacobson (Cal. Bar No. 269912)
8                                        jonas@dovel.com
                                         Simon Franzini (Cal. Bar No. 287631)
9                                        simon@dovel.com
                                         DOVEL & LUNER, LLP
10                                       201 Santa Monica Blvd., Suite 600
                                         Santa Monica, California 90401
11                                       Telephone: (310) 656-7066
                                         Facsimile: (310) 656-7069
12

13                                       *Counsel for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28